UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

BRENT ZAFUTO,

        Plaintiff,

    v.                                        **DECISION AND ORDER**
                                                          11-CV-916S

Dr. OKEEFE, Oral Surgeon, and
Nurse THOMAS, Medical Staff, in their
individual capacities,

        Defendants.

       1.       Brent Zafuto was at all relevant times an inmate in the custody of the New York Department of Corrections and Community Service ("DOCCS"). He brings this action under 42 U.S.C. § 1983, alleging that dental care and follow-up treatment he received in February of 2010 was deficient and violated his constitutional rights to be free from cruel and unusual punishment. Presently before this Court is Defendants' motion for summary judgment. For the following reasons, Defendants' motion is granted.

       2.       Under Rule 56 of the Rules of Civil Procedure the court can grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact." A fact is "material" if it "might affect the outcome of the suit under governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). A "genuine" dispute exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Id. In determining whether a genuine dispute regarding a material fact exists, the evidence and the inferences drawn from the evidence "must be viewed in the light most favorable to the party opposing the motion." Adickes v. S. H. Kress & Co., 398 U.S. 144, 158–59, 90 S. Ct.1598, 1609, 26 L. Ed. 2d 142 (1970) (internal

quotations and citation omitted). The function of the court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249.

3.  Zafuto alleges that on February 17, 2010 he was escorted from Collins Correction Facility to Attica Correctional Facility for a dental procedure. (Am. Compl., ¶¶ 15-16; Docket No. 4.) Defendant Dr. O'Keefe examined him and informed him that his "lower 'wisdom tooth'" required extraction.[1] (Id., ¶ 17.) Dr. O'Keefe then performed the procedure, but, according to Zafuto, "although Okeefe was fully aware that he would likely suffer an infection . . . Okeefe acted with a conscious disregard of the substantial risk of harm to Plaintiff, [by] refus[ing] to provide any antibiotics." (Id., ¶ 21.)

Thereafter, according to Zafuto, a severe infection took hold, and he requested medical care. (Zafuto Decl., ¶ 8; Docket No. 30.) But Nurse Thomas, who examined him that night, failed to provide adequate medical care despite an obvious infection. (Am. Compl., ¶ 37.) Instead, she instructed him to simply drink two glasses of water. (Id., ¶ 36.)

According to Zafuto, over the next few days the infection only grew worse. (Id., ¶¶ 38-40.) And, on February 21, 2010, he submitted a grievance on plain paper (because it was a Sunday and no designated grievance forms were available), stating that he "was in need of medical services and had been refused treatment by Nurse Thomas." (Zafuto Decl., ¶¶ 12–13.) The next day, February 22, 2010, he awoke to "increased pain, now to such a degree as to render [him] nearly unable to physically move any part of his body." (Am. Compl., ¶ 40.) He again requested that he be seen by the medical staff, and this time he was examined and eventually escorted to the hospital. (Id., ¶¶ 45-51.)

---

[1] Plaintiff and Defendants spell Dr. O'Keefe's name differently. This Court will adopt Defendants' spelling, unless quoting one of Plaintiff's submissions.

2

Once there, he was forced to undergo a second surgery near the infection site to correct a cyst "that was present during" his initial dental procure. (Zafuto Decl., ¶ 17.) He remained in the hospital for close to a month, and, on March 14, 2010, was finally released. (Id., ¶ 18.)

Nearly a year after this series of events, Zafuto was scheduled to have another dental procedure performed on January 7, 2011. (Id., ¶ 21.) Based on his experience in February of 2010, however, he refused treatment and submitted a grievance explaining his refusal. (Id., ¶ 22.) That grievance, seeking to receive dental care from someone other than Dr. O'Keefe, was denied – as was an appeal of that decision. (Id., ¶¶ 23-24.)

4.      Defendants do not presently contest the merits of Zafuto's suit. Instead, they move for summary judgment on grounds that he failed to exhaust administrative remedies as required by the Prison Litigation Reform Act of 1995 ("PLRA").

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion of administrative remedies in cases covered by the PLRA is mandatory, even when the prisoner seeks relief not available through grievance proceedings, such as monetary damages. Porter v. Nussle, 534 U.S. 516, 524, 122 S. Ct. 983, 988, 152 L. Ed. 2d 12 (2002).

The Nussle Court reasoned that requiring prisoners to utilize the administrative grievance process would reduce the quantity of prisoner suits, filter out frivolous claims, and clarify the legal issues in those cases that warrant federal court review. Id. at 524–25. In the interest of furthering these objectives, the Supreme Court held that "the PLRA's

exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Id. at 532.

5. The PLRA further requires "proper exhaustion," which "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." Ruggiero v. County of Orange, 467 F.3d 170, 175–76 (2d Cir. 2006) (quoting Woodford v. Ngo, 548 U.S. 81, 90–91, 126 S. Ct. 2378, 165 L. Ed. 2d 368 (2006)) ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings."). Thus, inmates "must complete the administrative review process in accordance with applicable procedural rules – rules that are defined not by the PLRA, but by the prison grievance process itself." Jones v. Bock, 549 U.S. 199, 218, 127 S. Ct. 910, 166 L. Ed. 2d 798 (2007) (internal citation and quotation omitted).

6. The New York State Department of Corrections and Community Service employs a three-step Inmate Grievance Program that requires an inmate to: (1) file a grievance with the Inmate Grievance Review Committee within 21 days of the alleged violation; (2) appeal to the superintendent within four working days of receiving the Inmate Grievance Resolution Committee's adverse written response; and appeal to the Central Office Review Committee in Albany, New York within four working days of receipt of the superintendent's adverse written response. See 7 N.Y.C.R.R. § 701.5; Abney v. McGinnis,

4

380 F.3d 663 (2d Cir. 2004).[2]

7.      Exhaustion under the PLRA, however, is not jurisdictional, <u>Richardson v. Goord</u>, 347 F.3d 431, 434 (2d Cir.2003), but is an affirmative defense, <u>Jenkins v. Haubert</u>, 179 F.3d 19, 28–29 (2d Cir.1999), that is itself subject to certain defenses such as estoppel, <u>Ziemba v. Wezner</u>, 366 F.3d 161, 163 (2d Cir. 2004). In assessing exhaustion of administrative remedies, the Second Circuit has determined that

> a three-part inquiry is appropriate in cases where a prisoner plaintiff plausibly seeks to counter defendants' contention that the prisoner has failed to exhaust available administrative remedies as required by the PLRA, 42 U.S.C. § 1997e(a). Depending on the inmate's explanation for the alleged failure to exhaust, the court must ask whether administrative remedies were in fact "available" to the prisoner. The Court should also inquire as to whether the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it, or whether the defendants' own actions inhibiting the inmate's exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense. If the court finds that administrative remedies were available to the plaintiff, and that the defendants are not estopped and have not forfeited their non-exhaustion defense, but that plaintiff nevertheless did not exhaust available remedies, the court should consider whether "special circumstances" have been plausibly alleged that justify "the prisoner's failure to comply with administrative procedural requirements."

<u>Hemphill v. New York</u>, 380 F.3d 680, 686 (2d Cir. 2004) (internal citations omitted). Unavailability of administrative remedies is governed by an objective test, which asks whether "a similarly situated individual of ordinary firmness would have deemed [grievance procedures] available." <u>Id.</u> at 688 (internal quotation marks omitted).

8.      Zafuto first contends that the grievance he submitted in January 2011, and

---

[2]DOCCS regulations are revised frequently. The appropriate regulations are those in effect at the time Zafuto filed his grievances. <u>See, e.g.</u>, <u>Amador v. Andrews</u>, 655 F.3d 89, 96 n. 3 (2d Cir. 2011). But the 2010 and 2011 regulations do not differ in any relevant respect from the current regulations.

5

the subsequent appeal, are sufficient for PLRA exhaustion purposes. Although he filed this grievance close to one year after the relevant incident occurred, he argues that the 21-day limitation period should not apply because he was hospitalized for the entire grievance period.

But, putting aside that Zafuto claims he had the capacity to submit a plain-paper grievance during this period (and didn't use the designated form only because it was a Sunday); and assuming that he had no "available remedy" during the 21-day period; and assuming still that any such period would toll the DOCCS limitations period, Zafuto fails to explain why those circumstances justify his delayed submission. Even if the 21-day period did not begin to run until he was released from the hospital, he still missed the deadline by nearly 10 months. Indeed, DOCCS' regulations specifically provide for as much as 45 days of tolling if "mitigating circumstances" are present. 7 N.Y.C.R.R. § 701.6(g)(1)(i)(a).[3] Thus it is not the case, as Zafuto appears to argue, that if an inmate is incapacitated for the initial 21 days, he is *ipso facto*, subject to no limitation period whatsoever. Zafuto points to no authority suggesting otherwise.

He does argue that Borges v. Piatkowski is "directly on point." 337 F. Supp. 2d 424, 425 (W.D.N.Y. 2004). But it is not. In Borges, Judge Larimer found that the inmate-plaintiff had no available remedies because he could not have known the basis for his claim until after the then-applicable 14-day time period expired. But Judge Larimer also noted that the plaintiff had been transferred to a new facility, and DOCCS' regulations at the time provided that a grievance would be considered moot when it only affected the specific grievant while he was

---

[3] The 45-day limitation is not relevant here since Zafuto was released from the hospital on March 14, 2010 and placed back in the general population at Collins the next day – well within 45 days of February 17, 2010.

6

a resident at the previous facility. Under such circumstances, present in Borges, the grievance committee was to "dismiss and close the grievance." Id. at 427 n. 2. By contrast, Zafuto does not contend that he was precluded from filing a grievance due to a facility transfer.

Accordingly, the January 2011 grievance, to the extent it is even sufficiently connected to the February 2010 dental procedure, was untimely filed and therefore does not satisfy PLRA's exhaustion requirement.

9.      Zafuto also argues that he exhausted his remedies by informal means. He contends that two requests for medical treatment in late February effectively "mirror the grievance and appeals process of the DOCCS." (Pl.'s Br. at 15; Docket No. 29). But this argument is foreclosed by Woodford, where the Supreme Court held that "PLRA exhaustion requirement requires *proper* exhaustion." 548 U.S. at 93 (emphasis added). DOCCS has established specific and detailed procedures that an inmate must utilize to properly exhaust his grievance. As the Supreme Court found, "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Id. at 91. The two informal requests for treatment plainly do not amount to "compliance with . . . critical procedural rules." And although DOCCS' regulations encourage inmates to pursue informal resolutions, if Zafuto wished to pursue this matter in federal court, "he was required by the [] grievance procedure to make a formal, or informal followed by formal, complaint of the prison officials' acts of which he now complains." See Toomer v. Cnty. of Nassau, No. 07-CV-01495 JFB/ETB, 2009 WL 1269946, at *7 (E.D.N.Y. May 5, 2009); see also Nussle, 534 U.S. at 524 ("Even when the prisoner seeks relief not available in grievance proceedings, notably

7

money damages, exhaustion is a prerequisite to suit.").

10. Zafuto further argues that a February 21, 2010 grievance, submitted on "plain paper," satisfies his PLRA exhaustion requirement.[4] In that grievance he purportedly complained that he "was in need of medical services and had been refused treatment by Nurse Thomas." (Zafuto Decl., ¶¶ 12–13.)

11. As an initial matter, Defendants contend that a search of their records produced no evidence of a February 2010 grievance. But Zafuto has submitted sworn testimony suggesting that such a grievance was in fact filed, (see Auleta Decl., ¶¶ 12–13; Docket No. 30) and, drawing all inferences and viewing this evidence in his favor, there remains a triable issue of fact on this issue.

Proceeding under the assumption that such a grievance was filed, this Court must next determine whether that grievance was sufficient for exhaustion purposes under the PLRA. This Court finds that it was not.

12. As noted above, to properly exhaust administrative remedies, an inmate must first file a grievance and then (1) appeal to the superintendent and (2) appeal to the Central Office Review Committee. By his own admission, Zafuto executed neither of these appeals. Nor does he contend that he attempted to execute them. Although the correctional facility took no action on Zafuto's grievance and may have ignored it or lost it, courts "have dismissed complaints at the pleading stage when an inmate confronted with facility inaction fails to proactively grieve a claim to completion." Chambliss v. Rosini, No. 09 CIV. 7221 PKC, 2010 WL 1838868, at *4 (S.D.N.Y. May 4, 2010) (citing Martinez v.

---

[4] DOCCS regulations expressly allow for such "plain paper" grievances. 7 N.Y.C.R.R. § 701.5(a)(1) ("If this [inmate-grievance-complaint] form is not readily available, a complaint may be submitted on plain paper.").

Williams, 186 F. Supp. 2d 353, 357 (S.D.N.Y. 2002), Waters v. Schneider, 2002 WL 727025, at *2 (S.D.N.Y. Apr. 23, 2002), & Veloz v. New York, 339 F. Supp. 2d 505, 516 (S.D.N.Y. 2004)). As the Martinez court found, "Plaintiff's argument that he is excused because defendants failed to act with respect to the grievance is unpersuasive. Plaintiff could have and should have appealed the grievance in accordance with grievance procedures." 186 F. Supp. 2d at 357; see also Atkins v. Menard, No. 9:11–CV–0366 (GTS/DEP), 2012 WL 4026840, at *4 (N.D.N.Y. Sept.12, 2012) (finding that plaintiff failed to exhaust where he had the "ability, and indeed the duty, to appeal the IGRC's nonresponse (to his grievance) to the next level, including CORC, to complete the grievance process."); Murray v. Palmer, No. 03–CV–1010, (DNH/GLS), 2008 WL 2522324, at *16, *18 (N.D.N.Y. June 20, 2008) (to exhaust available administrative remedies, plaintiff had to file an appeal with the superintendent from the IGRC's nonresponse, which included a failure to acknowledge the receipt of a grievance and assign it a number); Midalgo v. Bass, No. 03–CV–1128 (NAM/RFT), 2006 WL 2795332, at *7 (N.D.N.Y. Sept. 26, 2006) (plaintiff required to seek an appeal to the superintendent, even though he never received a response to his grievance and was not assigned a grievance number).

13.    In fact, DOCCS' regulations specifically contemplate such a situation. As the Murray court pointed out, "[i]t is important to emphasize that any failure by the IGRC or the superintendent to timely respond to a grievance or first-level appeal, respectively, can be appealed to the next level, including CORC, to complete the grievance process." 2008 WL 2522324 at *15 (quoting 7 N.Y.C.R.R. § 701.6(g)).

14.    Although other courts have found that an ignored grievance may render any remedies "unavailable," those cases concern situations where a corrections officer

9

proactively impeded an inmate's attempt to file a grievance, or where the inmate's repeated efforts to submit a grievance were rebuffed. See, e.g., Thomas v. New York State Dep't of Corr. Servs., No. 00 CIV. 7163 (NRB), 2002 WL 31164546, at *1 (S.D.N.Y. Sept. 30, 2002) (corrections officer told inmate not to file a grievance).

15.     Nor does any other part of the three-part analysis outlined in Hemphill save Zafuto's claim. There is no dispute that Defendants have not waived this defense; they raised it in their answer. (Ans. ¶ 20; Docket No. 9.) And, as noted, there is no allegation that any of the named Defendants, by their own actions, inhibited Zafuto's attempt at exhaustion.

Zafuto does argue, without citation to authority, that there is an "issue of fact as to whether" Defendants are estopped from asserting the exhaustion defense because the named defendants caused Zafuto's injury, which caused him to go to the hospital and thus caused him to be unable to complete a grievance form. (Pl.'s Br. at 18-19.) But without any authority suggesting that this type of indirect causation can serve as grounds for estoppel, this Court will not stray from settled law holding that estoppel only applies when a defendant directly impedes an inmate's attempts at exhaustion. See, e.g., Ziemba, 366 F.3d at 163 (estoppel may be applicable where corrections officers allegedly beat and threatened the inmate, denied him access to grievance forms, and transferred him to another correctional facility); Hemphill, 80 F.3d at 688 (estoppel may potentially bar an exhaustion defense where corrections officer threatened to bring criminal charges if the inmate filed a grievance).

16.     Finally, no special circumstances exist that would excuse Zafuto's failure to exhaust his claim. Indeed, aside from the circumstances already discussed and rejected,

Zafuto does not argue that special circumstances exist.  Accordingly, Defendants' motion is granted in full.

\*\*\*\*

IT HEREBY IS ORDERED, that Defendants' Motion for Summary Judgment (Docket No. 27) is GRANTED.

FURTHER, that the Clerk of Court shall close this case.

Dated:   January 24, 2014
        Buffalo, New York

                                           /s/William M. Skretny
                                          WILLIAM M. SKRETNY
                                          Chief Judge
                                          United States District Court